204 N.J. Super. 544 (1985)
499 A.2d 542
WALTER LOUIS FULTON, PLAINTIFF,
v.
PATRICIA ANN FULTON, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Union County.
September 12, 1985.
*545 Frank J. Paprota, Jr. for plaintiff (Namias & Paprota, attorneys).
BARISONEK, J.S.C.
Plaintiff Walter Louis Fulton filed a complaint for divorce pursuant to N.J.S.A. 2A:34-2(d) (18-month separation). The sole form of relief sought was dissolution of the marriage. Defendant Patricia Ann Fulton was personally served with the summons and complaint. Default was entered in accordance with R. 4:43-1 and the case proceeded pursuant to R. 4:43-2(b).
The case was presented to this court on January 28, 1985. Plaintiff testified that the parties had separated on or about June 1972, had remained separated until the present time and that there was no reasonable prospect of reconciliation, all of which was accepted as true. There was further testimony by plaintiff that there were four children born of the marriage and that some of the children may have been in foster care. The *546 court inquired as to the contribution of plaintiff toward support and if plaintiff was discharging any obligation of reimbursement for the foster care of the children. Plaintiff stated he was not contributing nor did he specifically know the status of the placement.
At the conclusion of testimony the court refused to grant judgment dissolving the marriage, not for lack of proof as to the cause of action but because the court was not satisfied that Mr. Fulton was discharging his obligation to contribute to the support of his children. Accordingly, plaintiff's counsel was directed to inquire of the Division of Youth and Family Services (DYFS) as to the status of the children. The court reserved decision pending receipt of this information.
The court, by letter dated February 28, 1985, was advised by DYFS that the eldest two children had reached the age of majority, the third was in foster care and the youngest child had been adopted in 1979.
Before this matter could be rescheduled for hearing, the court was advised by plaintiff's counsel that plaintiff died intestate on April 1, 1985. The court was then advised that the attorney wished to proceed and have a judgment of divorce adjudicated. Notice was then directed to the surrogate and to DYFS as to the status of the litigation to protect the interest of the children. A letter was then received from an attorney on behalf of the children urging that the divorce judgment be granted. No application for intervention, however, was filed.
The issue presented is whether a final judgment of divorce may be adjudicated after death of a litigant based upon testimony taken prior to the death.
The earliest matrimonial cases dealing with the intervening death of a party in divorce litigation held that the right to sue for divorce and the ancillary rights of alimony and counsel fees died with the party. Seibert v. Seibert, 86 A. 535 (E. & A. 1912); Dunham v. Dunham, 82 N.J. Eq. 395 (Ch.Div. 1913); Hoyt v. Hoyt, 98 N.J. Eq. 426 (Ch.Div. 1917); Sutphen v. Sutphen, 103 *547 N.J. Eq. 203 (Ch.Div. 1928). As will be later noted in more detail, Sutphen and Seibert have been overruled insofar as they are inconsistent with Williams v. Williams, 59 N.J. 229 (1971).
The rationale for these decisions was stated in Dunham, "If, therefore, a marriage be already dissolved by the death of one of the parties there is left no marriage relation or status of marriage upon which a decree of divorce could operate, and a pending divorce suit abates without surviving interest or right of revivor in anyone." 82 N.J. Eq. at 399. To enter a final judgment after the death of a party would be "unwarranted, extra-judicial and ineffective." Id. at 398.
More recent cases can be conceptually divided into two groups, those dealing with the death of a party prior to trial and those dealing with the death of a party following adjudication.
The first more modern case dealing with the death of a party during the pendency of matrimonial litigation is Williams v. Williams, supra. In Williams the attorneys for plaintiff-wife sought an award of counsel fees for services rendered prior to her death. The trial court had denied her application relying on Sutphen, analogizing the wife's claim for counsel fees to her personal right of a permanent alimony award. In reversing the decision of the trial court and the Sutphen and Seibert decisions insofar as they were inconsistent with the case then at bar, the Supreme Court stated:
In the counsel fee and cost situation, such as presented here, unlike the situation where an award of permanent alimony is sought after the wife's death, her death does not extinguish the need for the award. Her estate remains liable to the attorney as the contracting party and the only consequence of the abatement doctrine is to relieve the husband of any liability for such moneys. We think the exemption of the husband in such circumstances is unfair and incompatible with the policy underlying the grant of counsel fees and costs. [59 N.J. at 232-233]
Following Williams the case of Jacobson v. Jacobson, 146 N.J. Super. 491 (Ch.Div. 1976) was decided. In Jacobson, an action for divorce had been filed by plaintiff-wife. Before the case proceeded to trial, the wife was murdered. Defendant-husband *548 was arrested and imprisoned in connection with the homicide. Defendant then brought a motion to abate the issues of divorce, alimony, child support, custody, equitable distribution and counsel fees. The court granted defendant's motion with regard to the issues of divorce and alimony but denied the application regarding custody, child support, equitable distribution and counsel fees, reasoning that in the event the husband was criminally responsible for the death he should not be then allowed to defeat his wife's claim for equitable distribution and thereby profit from his wrongdoing.
The most recent case dealing with the death of a party in a pending divorce action is Castonguay v. Castonguay, 166 N.J. Super. 546 (App.Div. 1979). In that case plaintiff-wife had filed a complaint for divorce. Prior to trial defendant-husband died and the wife then sought dismissal of her divorce action which the trial court granted. Defendant's heirs and creditors opposed dismissal and appealed. In affirming the decision of the trial court, the Appellate Division held under those facts that the death of defendant prior to trial abated the divorce action and all claims for equitable distribution.
The law with regard to the postjudgment death of a party was stated in the case of Olen v. Olen, 124 N.J. Super. 373 (App.Div. 1973). In Olen, the trial judge had completed adjudication and placed his decision on the record in September 1972. A motion was filed to settle the form of judgment shortly thereafter. Judgment was entered on November 1, 1972. The judgment as entered did not reflect the fact that both parties had proven a cause of action. Plaintiff, who was pro se, filed an appeal instead of moving before the trial court for entry of an amended judgment. Before the decision could be rendered the wife died. The husband argued that the divorce was not effective until a corrected final judgment of divorce was signed. The Appellate Division remanded the cause for entry of an amended final judgment of divorce nunc pro tunc as of November 1, 1972. In its opinion the court noted that "Even if no judgment had been entered before defendant-wife's death, the *549 court would be called upon to enter a judgment nunc pro tunc as of the date of its ruling in accordance with its findings and conclusions." Id. at 376-377.
Turning to the case at bar, dicta in Sutphen, supra, suggests authority for the adjudication of this matter based on the testimony previously submitted by Mr. Fulton.
It is true that a court of equity, where a party entitled to decree dies between the submission of the cause and the determination thereof, will enter the decree as of the date of final hearing. Presumably, this is because the party has done all that he or she could do; the right has actually been proven and established by the evidence submitted, even though the court has not as yet arrived at that conclusion. [103 N.J. Eq. at 205.]
As in Williams, supra, adjudication and entry of judgment at this time would not be an empty act. Based on testimony previously submitted, along with the argument of counsel, the only asset of financial significance which the decedent enjoyed at the time of his death was the structured settlement of a personal injury suit recovered during the parties' separation. Since plaintiff died without a will, this settlement is potentially part of the intestate estate. N.J.S.A. 3B:5-2. Under N.J.S.A. 3B:5-3(c) the intestate share of a surviving spouse is defined as follows: "If there are surviving issue all of whom are issue of the surviving spouse also, the first $50,000.00, plus one-half of the balance of the intestate estate."
In contrast, should a decedent die not leaving a surviving spouse, the entire estate would pass to the issue in equal shares. N.J.S.A. 3B:5-4. Defendant's status as a spouse would therefore have a dramatic financial impact upon defendant and the children of the marriage.
To grant a final judgment of divorce at this time would not unjustly deprive the wife of marital assets. The parties were separated for a period of approximately 13 years. Dependent on the terms of the separation, assets acquired by the parties following the separation may be subject to equitable distribution. Brandenberg v. Brandenberg, 83 N.J. 198 (1980). Our Appellate Division has recently held that in appropriate *550 circumstances recoveries from personal injury suits are subject to equitable distribution. Landwehr v. Landwehr, 200 N.J. Super. 56 (App.Div. 1985).
Adjudication of a final judgment of divorce at this time would not unjustly deprive the wife of marital assets, but to the contrary would eliminate the potential of injustice to the children insofar as the wife may receive a large portion, if not all, of the assets of the decedent based on intestacy. A judgment of divorce therefore is granted in this matter nunc pro tunc January 28, 1985 based on the testimony previously taken.