Michele M. YELENIC

v.

Mary Ann CLARK, Personal Representative of the Estate of John J. Yelenic, Jr., a/k/a John Yelenic, Jr.

Appeal of Mary Ann Clark, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 29, 2007.
Filed April 12, 2007.

Efstathia G. Alexander, Pittsburgh, PA, for Clark, appellant.

Paul A. Bell, II, Indiana, PA, for Estate of Yelenic, appellant.

Daniel R. Lovette, Indiana, PA, for appellee.

BEFORE: ORIE MELVIN, TODD and BENDER, JJ.

OPINION BY BENDER, J.:

¶ 1 Mary Ann Clark (Appellant), personal representative of the estate of John J. Yelenic, Jr. (Decedent), appeals from the order issued on July 26, 2006, that denied Appellant's motion for entry of a posthumous decree in divorce.[1] We affirm.

¶ 2 In its opinion filed pursuant to Pa. R.A.P.1925, the Honorable Carol Hanna set forth the following factual and proce-dural history of the case, deriving the facts from the pleadings and testimony given at the hearing on May 18, 2006:

Michele M. Yelenic (hereinafter referred to as "Wife") and John J. Yelenic, Jr. (hereinafter referred to as "Husband") married on December 31, 1997 in Las Vegas, Nevada. During their marriage the parties adopted a child on March 17, 2000. The parties subsequently separated on March 6, 2002.

Wife filed a Complaint in Divorce on June 10, 2003, which included counts for equitable distribution, custody, child support, alimony, alimony pendente lite, and exclusive possession. The Wife's divorce complaint alleged indignities, and alternatively, that the marriage was irretrievably broken. Husband answered Wife's divorce complaint on July 12, 2004 and included a prayer for relief joining in Wife's request that the Court enter a decree in divorce.

In September and October 2004, special relief proceedings regarding the parties' child occurred. The parties also entered into an Interim Consent Order of Court/Agreement Regarding Custody and Visitation on September 16, 2004.

Husband filed an Affidavit under 23 Pa.C.S.A. § 3301(d) of the Divorce Code on October 17, 2005, stating that the parties had been separated for more than two years and the marriage was irretrievably broken. Wife filed a Counter–Affidavit on October 27, 2005 opposing the entry of a divorce decree because the marriage was not irretrievably broken.[2] Notably, Wife's Counter–Affi-

---

1. Michele M. Yelenic, widow of Decedent, has informed this Court that she agrees with Appellant's argument requesting the issuance of a posthumous divorce decree and will not file a separate brief. Letter, 12/01/06.

davit did not deny the duration of the marital separation.

2. Counsel for the Wife acknowledged at the May 18, 2006 proceeding that the Counter-Affidavit opposing the entry of a divorce decree was prepared for "tactical reasons."

A Petition to Enforce Settlement Agreement was filed by Husband's counsel on March 20, 2006. The Petition claimed that the parties and their counsel had negotiated a total settlement of all issues during a meeting on January 4, 2006. According to the Petition, a draft Marital Settlement Agreement, prepared by Husband's counsel, was forwarded to Wife's counsel on February 16, 2006, but Wife refused to sign the agreement due to a dispute regarding the duration of alimony *pendente lite.* The Court set a hearing on Husband's Petition for May 18, 2006.

Following the filing of Husband's Petition to Enforce Settlement Agreement, the parties agreed to resolve the economic issues and their marital relationship. Husband's counsel forwarded a Marital Settlement Agreement, an Affidavit of Consent and Waiver of Notice to Wife's counsel on April 3, 2006. Wife signed the Marital Settlement Agreement, the Affidavit of Consent and the Waiver of Notice on April 7, 2006. These documents were returned to Husband's counsel on April 8, 2006, and immediately forwarded to Husband for his signature. Husband signed both the Affidavit of Consent and Waiver of Notice of Intention to Request Entry of Divorce Decree under § 3301(c) of the Divorce Code and dated these documents April 8, 2006. However, Husband did not sign the Marital Settlement Agreement. Husband informed a legal assistant at his counsel's office on April 10, 2006 that he would arrange to sign the Marital Settlement Agreement before a Notary Public later that week.

On April 13, 2006, before he had an opportunity to sign the Marital Settlement Agreement, Husband was murdered at his residence. An estate was opened on behalf of Husband on May 18, 2006. Husband's cousin, Mary Ann Clark, was appointed personal representative.

The Court held a hearing to determine the parties' economic rights and obligations pursuant to § 3323(d) of the Divorce Code on May 18, 2006. The estate's personal representative and her attorney, Paul A. Bell, Wife's counsel, and Husband's counsel were present at this proceeding. Husband's counsel was authorized by the estate's attorney to speak on behalf of the estate. After taking testimony and evidence, an Order was entered that found that:

1. Grounds for Divorce under § 3301(d) of the Divorce Code had been established.

2. The parties' economic rights under the marriage should be determined by the Divorce Code pursuant to § 3323(d.1).

3. The Marital Settlement Agreement signed by Wife and Consented to by the Personal Representative of Husband's Estate should be enforced.

Following the Court's entry of this Order, Husband's counsel made an oral motion requesting the entry of a posthumous divorce decree. Wife's counsel and counsel for the personal representative joined in this motion. The Court initially denied this request, but agreed to take the issue under advisement.

Trial Court's Opinion (T.C.O.), 07/26/06, at 1–4. Subsequently, the trial court issued an order denying the request for the entry of a posthumous divorce decree.

¶ 3 Appellant's timely appeal presents the following issue for our review:

Whether the trial court erred in failing to grant the request of [Decedent's] estate to grant a decree in divorce to [Decedent] posthumously, or in the alternative, to grant the decree in divorce to [Decedent] nunc pro tunc?

Appellant's brief at 4.

■ ¶ 4 With regard to the issue raised, the trial court provided an extensive recitation of the law that is applicable to this matter. In addition to providing the principles outlined in long-standing case law, the court's discussion also noted that the Divorce Code was amended in January of 2005, allowing for the economic rights of the parties to be determined using equitable distribution standards and not the elective share provisions under the Probate Code, if certain prerequisites are met. Because we find the trial court's thorough discussion of the law pertinent to the holding here, we quote it verbatim:

> Pennsylvania courts have long held that an action in divorce abates upon the death of either party. *See Estate of Pinkerton v. Pinkerton*, 646 A.2d 1184 (Pa.Super. 1994); *Geraghty v. Geraghty*, 600 A.2d 1261 (Pa.Super. 1991); *Drumheller v. Marcello*, 532 A.2d 807 (Pa. 1987); *Hall v. Hall*, 482 A.2d 974 (Pa.Super. 1984); *Haviland v. Haviland*, 481 A.2d 1355 (Pa.Super. 1984); *Matuszek v. Matuszek*, 52 A.2d 381 (Pa.Super. 1947). The rationale for this principle is that an action in divorce is personal to the parties and upon the death of either party, the action necessarily dies. The primary purpose of divorce is to change the relation of the parties and when the death of a party occurs, that purpose can no longer be achieved because the marital relationship has been ended by death. *Drumheller v. Marcello*, 532 A.2d 807, 808 (Pa. 1987).

It is also well settled that equitable distribution of marital property may occur when a final decree in divorce has been entered and the court retains jurisdiction over ancillary matters properly raised by the parties. *Pastuszek v. Pastuszek*, 499 A.2d 1069 (Pa.Super. 1985). In this instance, the personal representative of the deceased spouse is substituted as a party and the action proceeds. *See* 23 Pa.C.S.A. § 3323(d). However, until the most recent amendments to the Divorce Code, if bifurcation had not occurred, then the economic claims were abated by death. *Pinkerton v. Pinkerton*, 646 A.2d 1184 (Pa.Super. 1994); *Geraghty v. Geraghty*, 600 A.2d 1261 (Pa.Super. 1991); *Myers v. Myers*, 580 A.2d 384 (Pa.Super. 1990).

On January 28, 2005, the Divorce Code was amended to provide that a divorce action will not abate upon the death of a spouse, so long as the grounds for divorce have been established. *See* 23 Pa.C.S.A. § 3323(d.1). Under the new subsection, if grounds for divorce have been established as set forth in 23 Pa.C.S.A. § 3323(g), then the parties' economic rights are determined under equitable distribution principles rather than the elective share provision of the Probate Code.[3] *See* 20 Pa.C.S.A. § 2203(c), which was also amended and is in *pari materia* with the Divorce Code.[4] The amendment represents a significant development and according to the Official Comment, the change in the law solves the problem for practitioners of how "to advise clients on whether to bifurcate divorce proceedings, because of the difficulties often involved in predicting whether equitable distribution would provide more favorable result than the elective share procedure." 23 Pa.C.S.A. § 3323(d.1) *Official Comment.* Under the new procedure, the death of a party does not abate the equitable distri-

bution action regardless of whether a divorce has been granted, so long as the grounds for divorce have been established.

---

3. Elective share provisions permit a spouse in Pennsylvania to claim one-third of certain properties of the other spouse's estate when the other spouse dies, thus overriding the deceased spouse's will. 20 Pa.C.S.A. §§ 2202–2211.

4. Divorce Code Amendments of 2004, Pub.L. No. 2004–175 (2004).

T.C.O. at 4–6.

¶ 5 In her brief, Appellant first discusses the evolution of the law as it pertains to divorce and equitable distribution, noting that *Upperman v. Upperman,* 119 Pa.Super. 341, 181 A. 252 (1935), first articulated the rule that a divorce action abates upon the death of one of the parties, *i.e.,* "[t]he suit abates absolutely on the death of a party before judgment and cannot be revived in the name of or against the representatives of the deceased party...." *Id.* at 256. However, recognizing that the court had some power, the court in *Upperman* determined that the court could resolve some of the outstanding property issues. This recognition became the basis for the enactment of section 3323(d), which provides:

(d) **Substitution for deceased party.—** If one of the parties dies after the decree of divorce has been entered, but prior to the final determination in such proceeding of the property rights and interests of the parties under this part, the personal representative of the deceased party shall be substituted as a party as provided by law and the action shall proceed.

23 Pa.C.S. § 3323(d).

¶ 6 Appellant also cites the concurring opinions in *Clingerman v. Sadowski,* 513 Pa. 179, 519 A.2d 378 (1986), a partition case wherein the majority opinion stated that "[t]he fortuitous timing of the demise of one of the spouses should not be permitted to prevent the executrix from establishing the true nature of the property as it existed before the death." *Id.* at 384. Both the Honorable Justice McDermott and Justice Hutchinson suggested that the reasoning in the majority opinion should be expanded to cases that involve equitable distribution in divorce matters. *Id.* at 385.

¶ 7 Thus, based upon the above and the recognition that case law allows litigation involving the status of marital property to continue after the death of one of the parties, Appellant questions why "litigation affecting the state of the *marriage* before death" should not likewise be continued after death "when important property rights are affected and litigation was pending." Appellant's brief at 13.

¶ 8 Appellant also cites section 3323(d.1), which the trial court here noted was part of the 2005 amendments to the Divorce Code. That section states:

(d.1) **Death of a party.—**In the event one party dies during the course of divorce proceedings, no decree of divorce has been entered and grounds have been established as provided in subsection (g), the parties' economic rights and obligations arising under the marriage shall be determined under this part rather than under 20 Pa.C.S. (relating to decedents, estates and fiduciaries).

23 Pa.C.S. § 3323(d.1). Based upon this amendment, Appellant contends that "the legislature made a clear statement that the property issues are of paramount concern in a divorce proceeding and the abatement of an action when one party died prior to the resolution of the property issue would be inequitable." Appellant's brief at 14. Then, relying on the amendment and the court's equity powers set forth in 23 Pa.

C.S. § 3323(f), Appellant asserts that "a decree can be granted in conjunction with the property disposition." *Id.*

¶ 9 Appellant next highlights the concern that although the economic claims have been resolved by the court's authority under section 3323(d.1), without the issuance of a decree the surviving spouse could be entitled to additional property as the beneficiary of insurance policies and retirement accounts that were not updated prior to the death of the other spouse, who pursuant to the agreement was to retain that property. In other words, if under the agreement a decedent retains ownership of a retirement account, which pursuant to the court's equitable distribution order was to be retained by him, but the named beneficiary on the account was the surviving spouse, could the surviving spouse receive those funds as the named beneficiary despite the equitable distribution order? Under this scenario, Appellant asserts that the enactment of section 3323(d.1) should be interpreted as giving the court the power to grant a divorce posthumously and in this manner prohibit the surviving spouse from receiving property that according to the agreement was to be the deceased spouse's separate estate.

¶ 10 An alternative argument presented by Appellant relies on *Fulton v. Fulton,* 204 N.J.Super. 544, 499 A.2d 542 (Ch.Div. 1985), a New Jersey case in which the court granted a divorce decree *nunc pro tunc.* The Fultons were separated for thirteen years and all testimony regarding the parties' assets had been presented to the court; however, the husband died prior to the entry of the final decree in divorce. The court determined that if no decree was entered the result would be inequitable, because "the wife may receive a large portion, if not all, of the assets of the decedent based on intestacy." *Id.* at 550, 499 A.2d at 545. Therefore, the court granted a judgment of divorce *nunc pro tunc,* a solution that Appellant contends should apply to the present case.

¶ 11 In responding to Appellant's arguments, the trial court acknowledged that divorce law has evolved over the years, most notably, in 1980, with the establishment of "no-fault" divorce, equitable distribution, and provisions for alimony. However, the court provided a lengthy list of cases that reaffirmed the holding in *Upperman* that a divorce action abated upon the death of one of the parties.[2] Moreover, in *Haviland,* the trial court here noted that our Court held that the Divorce Code enacted in 1980 did not change the rule that a divorce action abated upon the death of one of the spouses. Quoting *Haviland,* the trial court stated that " 'the property provisions of the Divorce Code are intended to apply to living spouses' and that if appellant's theory was accepted, 'the result would be that the mere unilateral filing of a divorce action, at any time prior to the death of a spouse, would be sufficient to upset and evade the operation of settled, established rules of probate and intestate succession.' " T.C.O. at 8–9 (quoting *Haviland,* 481 A.2d at 1357). Thus, the trial court recognized that "[i]n the absence of authorizing language, the *Haviland* court would not interpret the Divorce Code as advocated by the appellant." *Id.* at 9.

■ ¶ 12 The trial court then concluded:

[Appellant] has failed to convince this Court that *Upperman* has been undermined so as to permit the posthumous

2. The only exception to the abatement rule is found in *Drumheller,* which held that the Slayer's Act, 20 Pa.C.S. §§ 8801–8815, prevents abatement in a situation where one spouse kills the other.

entry of a divorce decree. But for the statutory exception created by § 3323(d.1), abatement remains the general rule. While the latest amendment to the Divorce Code does address the problem resulting from the death of a party where grounds for divorce have been established, the new provision is limited to the resolution of the parties' economic rights. The amendment does not provide for the entry of a divorce following the death of a party.

*Id.*

¶ 13 We agree with this statement made by the trial court and also recognize that at the same time section 3323(d.1) was added to the Divorce Code, section 2203(c) was added to the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 2203(c). Section 2203 ("Right of election; resident decedent") provides:

> **(c) Nonapplicability.**—Pursuant to 23 Pa.C.S. § 3323(d.1) (relating to decree of court), this section shall not apply in the event a married person domiciled in this Commonwealth dies during the course of divorce proceedings, no decree of divorce has been entered pursuant to 23 Pa.C.S. § 3323 and grounds have been established as provided in 23 Pa.C.S. § 3323(g).

20 Pa.C.S. § 2203(c). Therefore, it is evident that if a court concludes that grounds for divorce have been established under section 3323(d.1), then the parties' economic rights and obligations shall be determined under the Divorce Code and not pursuant to the Probate, Estates and Fiduciaries Code. Thus, Appellant's concern that the surviving spouse would receive her portion of the marital estate through equitable distribution and could follow that with an attempt to elect against the decedent's estate has been neutralized by the amendment to the Probate, Estates and Fiduciaries Code.

¶ 14 However, the trial court recognized that despite the elimination of the right to elect against the decedent's will by the surviving spouse, other issues remained, *i.e.,* surviving spouse's right to a share of the deceased spouse's estate through intestacy or a share through a bequest in decedent's will that was not changed. The trial court explained its position by stating:

> Abatement serves a simple purpose: it is the line of demarcation between the law of divorce and the law of decedent's estates. Clearly, the case law and statutory exceptions to abatement have attempted to bring the law up to date with the modern social policy of equitable distribution, which generally is more favorable for the surviving spouse than distribution through probate. When the Pennsylvania legislature added § 3323(d.1) to the Divorce Code, it also changed the elective share provisions of the Probate Code to eliminate the right of election where the grounds for divorce have been established. No other changes were made to the Probate Code and this Court can only conclude that the legislature did not intend to upset other aspects of the law of decedent's estates. Rather than using § 3323(f) so expansively to avoid the outcome that [Appellant] speculates about, parties to divorce actions would be well advised to change their wills or prepare a will *before* grounds for divorce are established.

T.C.O. at 11–12 (footnote omitted). We concur. Moreover, despite these possible difficulties, not as yet specifically addressed by the legislature, we agree with the trial court that "these occurrences would seem to be inconsistent with the Divorce Code amendments that prefer equitable distribution to inheritance." T.C.O. at 11. Moreover, the court's equitable powers set forth in 23 Pa.C.S.

§ 3323(f)[3] may be helpful under these circumstances, but no statutory sections that we are aware of authorize the trial court to grant a divorce posthumously.

¶ 15 In the alternative, Appellant contends that based upon the court's equity powers provided for in section 3323(f), a divorce decree *nunc pro tunc* could be granted. The trial court analyzed this issue as follows:

> [Appellant] notes that the parties negotiated a complete Marital Settlement Agreement, which included a provision that the parties would cooperate in obtaining a mutual consent divorce pursuant to § 3301(c) of the Divorce Code. In fact, both Husband and Wife executed Affidavits of Consent, and Waivers of Notice. Except for Husband signing the Marital Settlement Agreement, "all that remained was the ministerial act of filing the affidavits and waivers and having the court issue the divorce decree." (*[Appellant's Brief,* Section 6). Based upon this, [Appellant] proposes that a divorce decree *nunc pro tunc* be issued.

"*Nunc pro tunc*" is a Latin phrase that means "now for then." Generally, it refers to changing back to an earlier date of an order, judgment, or filing of a document. The purpose of nunc pro tunc is to correct errors or omissions to achieve results intended by the court at a prior date.

*Nunc pro tunc* divorce motions have been granted in our jurisdiction and others. In *Pinkerton v. Pinkerton*, 435 Pa.Super. 455, 646 A.2d 1184 (1994) a divorce was granted on the grounds of indignities to Wife. Husband appealed and Wife died the following day. The trial court bifurcated the proceedings nunc pro tunc and retained jurisdiction over the economic issues, and this was found to be proper by the superior court. In *Matuszek v. Matuszek*, 160 Pa.Super. 526, 52 A.2d 381 (1947) a divorce decree was entered on October 30, 1945. The Husband died in a mining accident on December 12, 1946. The Wife did not receive notice of the decree due to a clerical error. The court granted Wife leave to file exceptions nunc pro tunc.

The New Jersey Superior Court entered *nunc pro tunc* divorces in two cases. In *Fulton v. Fulton,* 204 N.J.Super. 544, 499 A.2d 542 (Ch.Div.1985), Husband filed for divorce. Testimony was taken at a hearing and grounds were established. The court reserved judgment pending receipt of information about the Husband's child support obligation. The court received this information, but before the matter could be rescheduled, Husband died. A judgment of divorce was granted *nunc pro tunc* on the date testimony in the case was originally taken. The *Fulton* case relied on *Olen v. Olen,* 124 N.J.Super. 373, 307 A.2d 121 (App.Div.1973) as authority. In *Olen* the trial court completed the adjudication and placed a decision on the record. The judgment was entered but was defective due to an error. Husband, who was proceeding *pro se,* filed an appeal rather than moving for the entry of an amended judgment. Wife died before the decision could be

---

3. Section 3323(f) states:

    **(f) Equity power and jurisdiction of the court.**—In a matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunction or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

rendered. The case was remanded for the entry of a divorce decree *nunc pro tunc* as of the date of the defective decree.

Here, what is absent, and why a divorce decree *nunc pro tunc* cannot issue, is a date precedent. [Appellant] suggests the date of the Marital Settlement Agreement, which was unsigned by Husband, or alternatively the date the parties signed the Affidavits of Consent and Waivers (which were signed on two different dates). Even the § 3301(d) Affidavits have separate dates and were executed several months prior to the parties negotiating the final Marital Settlement Agreement. While the parties had appeared before the Court on several occasions and made numerous filings, there never was a proceeding or pleading related to the entry of the divorce decree that would permit the Court to consider entering a divorce decree *nunc pro tunc.* Simply stated, while there is a "now," there was no "then."

T.C.O. at 12–14.

¶ 16 With the exception of the *Fulton* case from New Jersey, the cases relied on by the trial court all have in common the fact that a divorce decree was issued by the trial court, but that before the divorce decree became final, one spouse died. Thus, in these cases the "then" referenced by the trial court could be identified, while in the instant case that point in time cannot be identified.

¶ 17 Finally, as indicated by the trial court, this matter is emotionally compelling. However, even with both sides agreeing that a decree should be issued, we are unable to alter the fact that no authority of which we are aware or that was identified by a party allows for the entry of a posthumous divorce. Accordingly, we are compelled to affirm the trial court's order denying the motion requesting the entry of a posthumous divorce decree.

¶ 18 Order affirmed.