**Edward T. TAPER**

v.

**Donna J. TAPER, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 30, 2007.
Filed Dec. 26, 2007.

William J. McCormick, Bentleyville, for appellant.

Jeffrey P. Derrico, Washington, for appellee.

BEFORE: FORD ELLIOTT, P.J., ORIE MELVIN and TAMILIA, JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 In this divorce action, appellant, Donna J. Taper ("Wife"), appeals from the trial court's equitable distribution order and entry of the divorce decree, divorcing Wife from Edward T. Taper ("Husband").

¶ 2 The facts which led to this instant action are as follows. On June 15, 2001, Husband filed a divorce complaint. Thereafter, several pretrial conferences were held between the parties, but no settlement could be reached. In August of

2002, Husband amended his divorce complaint, and affidavits of consent were signed by both parties. In September of 2002, Wife filed an answer and counterclaim to the divorce complaint filed by Husband. On August 21, 2003, the first divorce master's hearing was held. However, neither Wife nor her attorney was present due to a scheduling error. At the hearing, Husband presented testimonial and documentary evidence. The master then filed a report on May 27, 2004. Wife filed exceptions; and as a result, the master held two additional days of hearings on February 8 and May 31, 2005, in order for Wife to present evidence. The divorce master then filed a second report on September 26, 2005.

¶ 3 In his report, the master found that the parties were married on December 6, 1982 in South Fayette Township, Allegheny County, Pennsylvania. (Master's report and recommendations, 9/26/05 at 2.) One child, Delilah Dawn, was born during the marriage on June 1, 1983. At the time of the parties' separation, the child had been emancipated. *(Id.)* On June 1, 2001, Husband and Wife separated. Wife remained in the marital home while Husband left with only $6 in his pockets. *(Id.)* Husband was employed as a cook for Allegheny County at the Ross Township Care Home and earned approximately $11 per hour. Wife was employed at Kribel's Bakery in Bridgeville, Pennsylvania and earned $7 per hour with no benefits. *(Id.* at 1.)

¶ 4 During the marriage, the parties acquired a home on August 5, 1998. *(Id.* at 2.) Husband had the home appraised by C. Roberta Aul on October 7, 2002. Ms. Aul estimated the value as $70,000. *(Id.)* Wife had the home appraised by Mario Persiani on August 30, 2002. He concluded that the home had a value of $57,500. *(Id.)* Mr. Persiani's evaluation was based

upon the fact that the slope of the land made it only 50% usable. Mr. Persiani testified at the hearing that based upon the approximate appreciation in the area of 3%, the value of the home in August of 2005 would be $62,675. *(Id.* at 2–3.) Striking a balance between Husband and Wife's appraisals, the master set the value of the marital residence at $66,500. *(Id.* at 3.) The master then recommended that the value of the marital home be split 55% to Husband and 45% to Wife. *(Id.* at 4.)

¶ 5 Additionally, Husband presented evidence regarding the value of the household furnishings and other personal items owned by the parties. The master found Husband's testimony particularly credible and set the value of personalty at $24,619. *(Id.* at 3.) The master ordered that certain personal property in the home be returned to Husband with approximately $17,969 of personal property awarded to Wife. *(Id.* at 4.) The master also found that Husband owned investment accounts worth $5,509 and had a pension plan worth $11,001. He awarded these accounts to Husband. *(Id.* at 3–4.) Lastly, the master found that the parties had approximately $5,710 of debt at the time of separation. The debt was paid entirely by Husband. *(Id.* at 4.)

¶ 6 Wife filed exceptions to the master's second report, and argument was scheduled for January 4, 2006. Wife then filed for a continuance, and argument was rescheduled for February 22, 2006. In the interim, Husband died on January 8, 2006. The trial court proceeded with argument on the exceptions; and on March 13, 2006, the court denied Wife's exceptions and adopted the master's report. On March 17, 2006, the court entered a divorce decree, granting a posthumous divorce to Husband on the grounds of mutual consent, 23 Pa.C.S.A. § 3301(c). *(See* Docket No. 38.) Wife filed a notice of appeal on

April 17, 2006[1] and was subsequently ordered by the trial court to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Wife timely complied and now raises two issues in her brief for our review.

1: Whether the court erred as a matter of law in adopting the master's report and recommendations where same did not equitably divide the property based upon the law and facts?

2: Whether the court erred as a matter of law in granting plaintiff/appellee's request for a post humous [sic] divorce?

Wife's brief at 5.

¶ 7 Before we may reach the merits of Wife's appeal, we must first dispose of the several motions before us. First, on December 29, 2006, Wife filed a motion to strike appellee's brief for lack of standing pursuant to Pa.R.A.P. 502(a). In her motion, Wife states that Husband died on January 8, 2006 and was granted a posthumous divorce on March 16, 2006. Wife then filed the instant appeal on April 17, 2006. In her motion to strike, Wife claims that since the death of Husband, Jeffrey P. Derrico, Esq., as Husband's attorney, no longer has a legal party in interest as a client, and thus, has no standing to file a brief in this matter.

¶ 8 However, since the filing of Wife's motion to strike, Attorney Derrico has filed a Suggestion of Death and Request for Substitution of Party on September 10, 2007.[2] In his request for substitution, Attorney Derrico states that following a hearing to determine the appropriate representative for Husband's estate held on March 14, 2007, letters of administration ***pendente lite*** were granted to Craig E. Wynn, Esq. Attorney Derrico suggests that Attorney Wynn be substituted as the appellee representing the estate of Husband for the limited purpose of this divorce action and appeal before this court.

¶ 9 Pursuant to Pa.R.A.P. 502(a), Substitution of Parties, we appoint Craig E. Wynn, Esq., to represent the interests of Husband's estate for the limited purpose of this instant divorce action and appeal before this court, the enforcement of the equitable distribution ordered by this court, and any further appeals which this action may generate. Therefore, we deny Wife's motion to strike appellee's brief on the basis of a lack of standing.

¶ 10 We will now examine the merits of Wife's issues raised on appeal. First, we will discuss her argument that the trial court erred in granting Husband a posthumous divorce.

Pennsylvania courts have long held that an action in divorce abates upon the death of either party. The rationale for this principle is that an action in divorce is personal to the parties and upon the death of either party, the action necessarily dies. The primary purpose of di-

---

1. Wife filed two notices of appeal, one from the March 13, 2006 order denying her exceptions and affirming the master's report (No. 698 WDA 2006) and one from the March 16, 2006 divorce decree (No. 699 WDA 2006). Pursuant to the order dated May 5, 2006 and filed June 15, 2006, this court *sua sponte* dismissed Wife's appeal at No. 698 WDA 2006 as duplicative. Both appeals involved issues arising out of the divorce action, and thus the appeal from the divorce decree was proper.

2. Previously, on February 8, 2007, Attorney Derrico filed a Suggestion of Death and Request for Substitution of Party suggesting that either himself or Susan P. Mazinnis, Husband's girlfriend, represent the interests of Husband's Estate in the instant action. However, we will defer to Husband's most recent filing and deny his first petition.

vorce is to change the relation of the parties and when the death of a party occurs, that purpose can no longer be achieved because the marital relationship has been ended by death.

*Yelenic v. Clark,* 922 A.2d 935, 938 (Pa.Super.2007) (citations omitted). Additionally, it has long been held by the Pennsylvania courts that equitable distribution occurs only after a divorce decree is issued. *Savage v. Savage,* 736 A.2d 633, 644 (Pa.Super.1999); *In re Estate of Bullotta,* 575 Pa. 587, 591, 838 A.2d 594, 596 (2003).

■ ¶ 11 However, on January 28, 2005, the Divorce Code was amended to provide that upon the death of a spouse, a divorce action will not abate so long as the grounds for divorce have been established. 23 Pa.C.S.A. § 3323(d.1). Under this subsection, if grounds for divorce have been established as set forth in 23 Pa.C.S.A. § 3323(g), then the parties' economic rights are determined under the equitable distribution principles rather than the elective share provisions of the Probate Code.

■ ¶ 12 Wife argues that this new provision of the Divorce Code does not extend to allow a court to grant a posthumous divorce. We agree. Recently, this court held in *Yelenic* that even in light of the latest amendments to the Divorce Code, specifically the addition of 23 Pa.C.S.A. § 3323(d.1), that there is no statutory authority which allows for the entry of a posthumous divorce. *Yelenic, supra.* Thus, we must vacate the trial court's order granting the parties a divorce.

¶ 13 Although we have vacated the divorce decree between Husband and Wife, we find that this does not affect the trial

court's order of equitable distribution based upon 23 Pa.C.S.A. § 3323(d.1).

■ ¶ 14 Section 3323(d.1) states:

§ 3323. Decree of Court

. . . .

**(d.1) Death of a party.**—In the event one party dies during the course of divorce proceedings, no decree of divorce has been entered and grounds have been established as provided in subsection (g), the parties' economic rights and obligations arising under the marriage shall be determined under this part rather than under 20 Pa.C.S. (relating to decedents, estates and fiduciaries).

23 Pa.C.S.A. § 3323(d.1). Prior to Husband's death, grounds for divorce had been established under 23 Pa.C.S.A. § 3301(c).[3] On August 22, 2002 the parties both alleged that the marriage was irretrievably broken and filed affidavits of consent to the divorce. *(See* Docket Nos. 8 and 9.) Therefore, we are able to determine the parties' economic rights and obligations under the principles of equitable distribution as established by statute.

■ ¶ 15 Thus, we may now turn to the merits of Wife's second issue: whether the trial court erred in adopting the master's equitable distribution scheme. In general, this court will not disturb a trial court's equitable distribution order absent an abuse of discretion or error of law that is demonstrated by clear and convincing evidence. *Gilliland v. Gilliland,* 751 A.2d 1169, 1171 (Pa.Super.2000), *appeal denied,* 563 Pa. 702, 761 A.2d 550 (2000). Additionally, the master's report and recommendation, although only advisory, is to be

3. § 3301. Grounds for divorce
   (c) **Mutual consent.**—The court may grant a divorce where it is alleged that the marriage is irretrievably broken and 90 days have elapsed from the date of commencement of an action under this part and an affidavit has been filed by each of the parties evidencing that each of the parties consents to the divorce.

given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties. *Moran v. Moran*, 839 A.2d 1091, 1095 (Pa.Super.2003).

¶ 16 There is no simple formula by which to divide marital property; the method of distribution derives from the facts of the individual case. *Gaydos v. Gaydos*, 693 A.2d 1368, 1376 (Pa.Super.1997). In making an equitable distribution of property, the court must consider all relevant factors. *See* 23 Pa.C.S.A. § 3502. "The courts attempt to split property equitably, instead of equally, taking into consideration such factors as length of marriage, the contributions of both spouses, ages and health of each spouse." *Drake v. Drake*, 555 Pa. 481, 490, 725 A.2d 717, 721 (1999). When reviewing an equitable distribution award, this court must consider the distribution scheme as a whole. *Wang v. Feng*, 888 A.2d 882, 887 (Pa.Super.2005), citing *Schenk v. Schenk*, 880 A.2d 633, 643 (Pa.Super.2005).

¶ 17 Instantly, in his report, the divorce master listed and individually discussed each of the relevant factors established in Section 3502. (Master's report and recommendations, 9/26/05 at 5–6.) In evaluating the factors, he determined that both parties have relatively similar education levels, sources of income, earning power, and health. He stated that he found Husband's testimony particularly credible regarding the value of the parties' personal property. *(Id.* at 3.) He also noted that Husband had assumed all of the parties' marital debt upon their separation due to Wife's fiscal irresponsibility. *(Id.)* He stated that upon separation, Wife remained in the marital home while Husband was forced to leave with only $6 in his pockets. *(Id.* at 2.) Wife then remained in the marital home throughout the separation beginning in June of 2001. The master did not divide the assets exactly equally between the parties; the disparity was approximately $6,131 additional given to Husband. However, as we previously stated, equitable distribution does not mean that assets will be divided equally. *Drake, supra.*

¶ 18 Based upon the foregoing as well as the master's determination of credibility, we find that the trial court did not abuse its discretion in adopting the master's report and recommendation regarding the equitable distribution of the parties' assets. Thus, we affirm the trial court's order as it pertains to equitable distribution.

¶ 19 Order vacated in part and affirmed in part. Motion to strike denied. "Suggestion of Death and Substitution of Party" filed February 8, 2007 denied; "Suggestion of Death and Substitution of Party" filed September 10, 2007 granted. Jurisdiction relinquished.