J-S32022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| TRACEY OSBORNE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WESLEY OSBORNE, | |
| Appellant | No. 1774 WDA 2014 |

Appeal from the Order Entered October 1, 2014
In the Court of Common Pleas of Lawrence County
Domestic Relations at No(s): 11099 of 2010, C.A.

| TRACEY OSBORNE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| WESLEY OSBORNE, | |
| Appellee | No. 1812 WDA 2014 |

Appeal from the Order Entered October 1, 2014
In the Court of Common Pleas of Lawrence County
Domestic Relations at No(s): 11099 of 2010, C.A.

BEFORE:  SHOGAN, OLSON AND MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 24, 2015**

Wesley Osborne ("Husband") appeals and Tracey Osborne ("Wife") cross-appeals from the October 1, 2014 final decree of equitable distribution, and award of alimony, in this divorce action.  Upon review, we affirm.

The trial court briefly summarized the facts and procedural history of this case as follows:

[Husband and Wife] were married on August 30, 1986 and separated on July 8, 2010. Wife is currently 50 years old. During the course of the parties' marriage, Wife worked as a Radiograph Technician, and Wife financially contributed to the parties' marriage. Wife continues to maintain full-time employment as a Radiograph Technician. Husband is currently 49 years old. Husband initially worked at a landscaping company and served as the primary wage earner. During the marriage, Husband expanded his level of education at Penn State University and established several businesses relating to lawn service and contracting and wildlife control.

The parties own substantial marital assets, which are subject to equitable distribution. Their assets include fifteen pieces of real property valued at $1,184,000.00. The parties additionally owned personal property, vehicles and proceeds from an oil and gas lease. The marital debt equals approximately $415,597.16. Following several days of equitable distribution hearings, the Master entered a report and recommended order dividing the marital estate. Pursuant to the Master's recommendations, Wife was awarded specific pieces of real property, a lump sum equitable distribution award, counsel fees and spousal support.

Trial Court Opinion, 10/1/2014, at 1-2.

Wife filed a divorce complaint on July 20, 2010. On August 2, 2010, the trial court entered an order temporarily enjoining the parties from taking or disposing of items of marital property. Thereafter, Robert J. DiBuono, Esquire was appointed as Master. The Master held equitable distribution hearings and issued a report and recommendation on May 12, 2014. As the factual recitation states, among other things, the Master's recommendation awarded 11 of the couple's 15 properties to Husband and four to Wife. On May 29, 2014, Husband filed exceptions to the Master's report. Wife filed a petition for special relief and contempt on June 23, 2014. In that petition,

Wife claimed that, after the Master issued his report, Husband removed items of joint personal property from the parties' Tionesta camp. The trial court entered an order stating it would consider Wife's petition at a scheduled hearing on Husband's exceptions.

Following several days of hearings, the trial court entered a final decree of equitable distribution and award of alimony on October 1, 2014. In its final decree, the trial court granted one of Husband's exceptions. Whereas the Master's report recommended that the parties take equal 50% shares in the oil and gas leases on the parties' fifteen properties, the trial court determined each oil and gas lease should be awarded to the individual who acquired title to the real property to which each lease was attached. Thus, the trial court concluded that Husband retained the gas and oil leases on 11 of the 15 properties; Wife retained the leases on her four properties. The trial court also upheld the Master's award of counsel fees to Wife. Additionally, the trial court denied relief on Wife's petition for special relief and contempt, concluding that she failed to present sufficient evidence to sustain a finding of contempt. The parties timely appealed.[1]

_____

[1] Husband filed a notice of appeal on October 27, 2014. On October 31, 2014, Wife filed a notice of cross-appeal pursuant to Pa.R.A.P. 903(b). On October 27, 2014, the trial court ordered Husband to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On November 3, 2014, the trial court ordered Wife to file a Rule 1925(b) concise statement. The trial court entered an order on November 14, 2014, relying upon its earlier opinion filed on October 1, 2014 as justification for its prior determination.

On appeal, Husband raises the following issues for our review:

1. Whether [the] trial court erred in finding that the Master appropriately assigned the real property.

2. Whether [the] trial court erred in finding that the Master's awarding of all personal property located at 294 Bedford Road property to Wife was reasonable.

3. Whether [the] trial court erred in finding that the record supports the Master's findings regarding Wife's income and expenses.

4. Whether [the] trial court erred in finding that the record supports the Master's findings in applying the statutory factors as to alimony and awarding Wife alimony.

5. Whether [the] trial court erred in finding that the record supports the Master's findings in requiring Husband to pay Wife's counsel fees in the amount to $5,100.00.

6. Whether [the] trial court erred in finding that the record supports the Master's findings in releasing funds [for property tax liability] from the escrow account [holding bonus proceeds from the parties' gas and oil lease].

7. Whether [the] trial court erred in finding that the record supports the Master's [determination that Wife's appraisers were credible].

8. Whether [the] trial court erred in finding [the Master's error in misidentifying real property was harmless].

9. Whether [the] trial court erred in finding that the record supports the Master's findings in awarding Wife more than fifty percent (50%) of the marital estate and that the exception is moot and in finding that the record supports the Master's findings of fact and conclusions in his analysis of the statutory factors set forth in Section 3502(a) of the Divorce Code.

10. Whether [the] trial court erred in finding that the record supports the Master's findings in awarding Wife the Harley Davidson Sportster.

11. Whether [the] trial court erred in finding that the record supports the Master's findings regarding the 1971 Oldsmobile 442.

12. Whether [the] trial court erred in finding that the record supports the Master's findings in the calculation of the net value of the marital estate, including failure to award Husband credit for payments made on the marital liability, inaccurately valuing the real property, attributing tax liability of [an] oil and gas lease solely to Husband, and attributing further oil and gas royalties. Therefore, further error was committed in awarding Wife a lump sum payment of $66,000.00.

13. Whether [the] trial court erred in denying [Husband's] exceptions[].

Husband's Brief at 8-9 (some capitalization and suggested answers omitted; issues numbered).

Initially, we note that Husband has failed to set forth each of the questions presented with corresponding arguments in contravention of our rules of appellate procedure. *See* Pa.R.A.P. 2119 ("The argument shall be divided into as many parts as there are questions to be argued."). Instead, Husband abandons his ninth and eleventh claims set forth above and lumps the remainder of his issues into one argument section. Moreover, Husband's last two issues as presented are cumulative, generally challenging the equitable distribution scheme as a whole and the trial court's failure to grant his exceptions in their entirety. We could consider all of Husband's issues waived for failing to develop properly in corresponding argument sections of

his appellate brief. **See Lackner v. Glosser**, 892 A.2d 21, 29 (Pa. Super. 2006). Husband abandoned his ninth and eleventh issues and he has waived them. **Id.** However, we will examine those issues that Husband developed in his brief.

Husband's first contention encompasses his first, second, seventh and eighth issues as set forth above. Husband argues that the trial court erred by awarding certain property to Wife because it "significantly impaired [his] ability in [to maintain] his businesses." Husband's Brief at 15. Husband challenges the Master's determination of property values and challenges the weight given to the parties' expert testimony, pointing to alleged inaccuracies in Wife's expert appraisals. **Id.** at 16-17. Husband suggests that the trial court should have "ordered equitable distribution payments by Husband to Wife over a period of years" and awarded him "more of the real property[,]" allowing him to "best determine which properties, if needed, could be liquidated to comply with an order for equitable distribution over time." **Id.** at 17.

This Court previously determined:

> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly

unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*Childress v. Bogosian*, 12 A.3d 448, 455-456 (Pa. Super. 2011) (citations, quotations, and brackets omitted). "[E]quitable distribution does not mean that assets will be divided equally." *Taper v. Taper*, 939 A.2d 969, 974 (Pa. Super. 2007).

Here, regarding the division of the real property, the trial court noted:

The Master's Report and Recommendation indicated that the Master heavily considered Husband's business and how a division of property would affect Husband's ability to maintain his business. The Master specifically stated, "[a]n additional consideration i[s] that Husband should retain more of the real property so he [can] continue operating the business." The Master's Report goes on to analyze how a property award in Husband's favor would impact Wife's interest in the marital property. Therefore, Husband's first argument that the Master's analysis fails to consider Husband's reliance on the property in continuing his business is unsupported by the record.

Husband further argues that his business will financially suffer if he does not receive the "bulk" of the marital property. Husband specifically takes exception to Wife being awarded the property located at 294 Bedford Road, which Husband refers to as Osborne Farm. At the time of argument on Husband's exceptions, Husband asserted that this piece of property is vital for his landscaping business. A review of the transcripts from the equitable distribution proceedings, however, indicates Husband associated some level of necessity with each piece of property and the future success of his businesses. The 294 Bedford Road property contains a residence, which Husband characterized as a rental property. For this reason, the Master determined that it would be appropriate for Wife to receive this property to live in or rent and otherwise generate additional income.

In a case like this, where the majority of the marital estate is invested in real property, it is disingenuous for either party to expect an award of the entire marital estate when there are insufficient liquid assets to compensate the other spouse for their investment into the marriage. Husband and Wife purchased the marital property over time as Husband's businesses developed. Wife's work outside and inside the home substantially contributed to Husband's ability to successfully develop his businesses. Therefore, the [trial c]ourt finds no error in the assignment of real property in the instant case.

Trial Court Opinion, 10/1/2014, at 5-7 (record citations omitted).

Upon review, we agree. Both the Master and the trial court recognized that the marital estate in this case consists largely of "fifteen pieces of real property valued at $1,184.000.00" and the "marital debt is comprised of several mortgages, and personal and business loans […] equal[ing] approximately $415,597.16." *Id.* at 2. Because there were few liquid assets in this matter, it would have been inequitable to have given all of the property to one party. In effectuating economic justice between the parties, we discern no error in distributing the real property as the Master did.

Moreover, we note that Husband retained the marital residence and the Master accounted for that fact by awarding Wife real property where she could either live or generate additional rental income in order to obtain a residence. We discern no error.

Next, Husband argues that the Master's alimony award to Wife was punitive because the record reflects that Wife is able to sustain herself through employment and she has minimal expenses. *Id.* at 20. This argument fairly encompasses issues three and four as set forth in Husband's brief.

"Our standard of review over an alimony award is an abuse of discretion." *Gates v. Gates*, 933 A.2d 102, 106 (Pa. Super. 2007). We previously have explained that

> the purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.
>
> In determining whether alimony is necessary, and in determining the nature, amount, duration and manner of payment of alimony, the court must consider numerous factors including the parties' earnings and earning capacities, income sources, mental and physical conditions, contributions to the earning power of the other, educations,

standard of living during the marriage, the contribution of a spouse as homemaker and the duration of the marriage.

*Gates*, 933 A.2d at 106, *citing* 23 Pa.C.S.A. § 3701 (quotations and original emphasis omitted).

On this issue, the trial court concluded:

[T]he Master carefully evaluated each of the seventeen factors [under 23 Pa.C.S.A. § 3701] in determining whether Wife was entitled to an award of alimony. The Master properly concluded that any marital misconduct displayed by Wife was a result of Wife attempting to maintain a financial status quo at the marital residence. Furthermore, the parties were married for a considerable period of time, and Wife's employment outside of the home enabled Husband to pursue his career goals. The Master additionally acknowledges that Husband's earning capacity was superior to Wife's, and that Wife's basic needs could not be sustained via her equitable distribution award because there is a de minimus liquid estate available to the parties. For these reasons, the Master concluded that an award of alimony in the amount of $500.00 would be appropriate and the [trial c]ourt agrees with the Master's conclusion.

Trial Court Opinion, 10/1/2014, at 13.

Upon review, we agree. The Master carefully weighed all of the statutory factors under Section 3701 in awarding alimony in this case. We further note that the Master tailored the alimony award to cover an eight-year period. Master's Report, 5/12/2014, at 63. The Master concluded that there was a $600.00 disparity between Husband and Wife's monthly net income. *Id.* at 57. The Master also noted that Husband retained all of the parties' businesses (and most of the equipment associated with them) and those businesses generated over $300,000.00 per year in gross profits. *Id*. Whereas, the Master recognized that "[a]lthough Wife has a post-secondary

school degree, she will remain employed in her field and cannot reasonably expect to experience a substantial increase in salary." *Id.* at 65. Finally, the Master stated that the marriage lasted 24 years and ended because "Husband was unfaithful to Wife." *Id.* Here, the Master determined that alimony was necessary because Wife was without adequate liquid assets following the equitable distribution of the parties' substantial real estate holdings. We discern no abuse of discretion by the trial court in upholding the alimony award.

Corresponding with issue five above, Husband contends that the trial court erred in requiring Husband to pay $5,100.00 for Wife's counsel fees, considering she "received an advanced distribution of $15,000.00" from the marital assets and "also received approximately $21,000.00 from the signing of gas leases[.]" Husband's Brief at 21. Husband claims the trial court compounded the error by failing to consider that Wife's expert, her appraiser, prolonged proceedings due to his unavailability. *Id.*

The following principles apply to our review of the award of counsel fees:

> We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be on par with one another.
>
> Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's

- 11 -

financial resources, the value of the services rendered, and the property received in equitable distribution.

Counsel fees are awarded only upon a showing of need. In most cases, each party's financial considerations will ultimately dictate whether an award of counsel fees is appropriate. Also pertinent to our review is that, in determining whether the court has abused its discretion, we do not usurp the court's duty as fact finder.

**Busse v. Busse**, 921 A.2d 1248, 1258 (Pa. Super. 2007) (internal citations omitted).

As previously discussed, the Master and the trial court carefully examined the parties' financial situations following equitable distribution hearings and determined that Wife was at an economic disadvantage. The Master issued his report and recommendation in May 2014 and, at that time, Wife had incurred well over $20,000.00 in legal fees, obtained property appraisals totaling $4,325.00, and had expended additional unknown sums to procure expert testimony. Master's Report, 5/12/2014, at 66. Accordingly, the Master concluded, "[t]he costs associated with this equitable distribution matter were extensive, as numerous appraisals of property were conducted, issues were litigated and six equitable distribution hearings were conducted. Wife was unable to timely pay her living expenses, let alone fees related to the divorce action." **Id.** at 67. Based upon our standard of review, we discern no abuse of discretion in awarding Wife counsel fees.

Next, in relation to Husband's tenth issue on appeal, Husband avers that the trial court erred in concluding the record supported the Master's

- 12 -

award of a Harley Davidson Sportster motorcycle to Wife, because "Wife offered no testimony that she rode or used the motorcycle or that it was an asset that she predominantly wanted to retain." Husband's Brief, at 22. As Husband acknowledges, "the motorcycle was purchased during the marriage." *Id.* Husband, however, makes no argument that the trial court failed to consider this asset in conjunction with the distribution scheme as a whole. We note that the Master also recommended that Husband retain a Harley Davidson Softail, 1993 Ford kit, 1971 Oldsmobile 442, and 2005 Ford F-150, as well as the marital net value of three other automobiles. Master's Report, 5/12/2014, at 54. We remind Husband that the goal of equitable distribution is to effectuate economic justice between the parties, not to assign individual assets based upon use or need. Here, the Master heard expert appraisal testimony, assigned values for the parties' personal property, and divided the property among the parties accordingly. Accordingly, we discern no abuse of discretion in awarding Wife the Harley Davidson Sportster motorcycle.

Finally, in conjunction with his sixth issue as presented, Husband argues he "should have been awarded with a credit for Wife's portion of the tax liability for [] gas lease bonus money." Husband's Brief at 23. He asserts that he claimed gas lease bonus money on his 2012 tax returns, the assets placed him in a higher tax bracket, and he had to request money be released from escrow to satisfy the tax liability. *Id.*

Here, the trial court recognized that the tax liability on funds received from a gas lease bonus was paid from an escrow account **prior** to equitable distribution, so the money came directly from the marital estate. More specifically, the trial court determined:

> Prior to the equitable distribution proceedings, the parties received the sum of $72,930.00 as a sign-on bonus under an oil and gas lease. The $72,930.00 was then placed in escrow with Husband's counsel. Each party received a $15,000.00 advance from these sums. Wife used her advance for payment of counsel fees. Husband subsequently received $21,733.14 from these sums, which Husband applied towards the tax liability incurred from the original $72,930.00. A portion of the tax liability was penalties and interest (approximately $5,000.00) caused by Husband's failure to pay the tax. Thus, balance on the escrow funds equaled $21,196.86 at the time of equitable distribution.
>
> Husband contends that the Master assigned the total tax liability to Husband, but Husband's contention is erroneous. The money used by Husband to pay the tax liability was an additional withdrawal from the marital portion of money. Therefore, the tax liability was paid equally by Husband and Wife.

Trial Court Opinion, 10/1/2014, at 15.

We agree. Husband is mistaken that he was solely liable for the tax liability on the parties' gas lease bonus. Upon review, the taxes were paid from escrow prior to equitable distribution and were, therefore, paid through the marital estate. Husband is not entitled to relief. For all of the foregoing reasons, Husband's issues on appeal are without merit.

In her cross-appeal, Wife raises the following issues for our review:

I.  Whether the court abused its discretion or made an error of law, in failing to reserve to each party one-half of the oil, mineral, and gas rights in property that was acquired during the marriage and subject to jointly executed leases for the oil, mineral, and gas rights where the Superior [Court] has made a determination that said rights are significant and determinable as property of parties subject to an equitable distribution action?

II.  Whether the court abused its discretion or made an error of law, where it failed to hold [Husband] in contempt of its prior order compelling him to return marital property to the parties['] Tionesta camp property that had been awarded to [Wife] in divorce, and further, failed to clearly state that [Husband] continued to be responsible to return said items of marital property which he had admitted that he removed from the camp, under testimony before the court?

Wife's Brief, at 8 (complete capitalization and suggested answers omitted).

In her first issue, Wife claims that the trial court

granted [H]usband's exception no. 12, overturning the proposed order of the Master, recommending that each party retain equal rights to oil, gas, and mineral [reserves], in all real property acquired during the marriage. Instead, the trial court ordered to the contrary that the oil, gas, and mineral rights, would run only with the title owner of the land. In doing so, [W]ife was divested of significant property rights, as the oil, gas, and mineral rights, in that [H]usband was awarded eleven (11) of the parties['] fifteen (15) pieces of real property, with the trial court's order then excluding her from her share of property rights to the distribution to the oil, gas, and mineral rights in the pieces of real estate awarded to [H]usband.

*Id.* at 13.

Generally, "[i]n order to preserve an issue for appeal, a party must make an exception to the Hearing Officer's report." *Hayward v. Hayward*,

868 A.2d 554, 561 (Pa. Super. 2005), *citing* Pa.R.C.P. 1920.55-2(b). Otherwise, the issue is waived. **Id.** Here, Wife never filed exceptions to the Master's report. However, the trial court granted one of Husband's exceptions and Wife challenged that determination at her first available opportunity, in her Rule 1925(b) statement. Hence, we find that the issue is properly before us.

In granting Husband's exception and determining that oil and gas leases belong to the owner of the real property, instead of dividing the leases equally between Husband and Wife, the trial court stated:

> In their very nature, the receipt of oil and gas proceeds are speculative; to award one party a future right to an asset assigned to the opposing party fails to cause a final economic resolution to the equitable proceedings. Therefore, each party shall be awarded 100% of all future oil and gas mineral rights received from their respective properties.

Trial Court Opinion, 10/1/2014, at 16.

Here, the trial court addressed the impracticalities of dividing the oil and gas leases evenly, and without regard to the award of title to any real property interest, between the parties. The trial court expressed concern about creating a situation in which a non-property owner would continue to have an ownership interest in oil and gas leases attached to lands held by a former spouse. We are mindful of the following principles:

> An oil and gas lease reflects a conveyance of property rights within a highly technical and well-developed industry, and thus certain aspects of property law as refined by and utilized within the industry are necessarily brought into

- 16 -

play. The [Pennsylvania] Supreme Court has aptly observed that the traditional oil and gas lease is far from the simplest of property concepts. In the context of oil and gas leases, the title conveyed is inchoate and initially for the purpose of exploration and development. If development during the primary term is unsuccessful, no estate vests in the lessee. If oil or gas is produced, the right to produce becomes vested and the lessee has a property right to extract the oil or gas. In such circumstances the lessee will be protected in accordance with the terms of the lease and will be required to operate the leasehold for the benefit of both parties. Royalty-based leases are to be construed in a manner designed to promote the full and diligent development of the leasehold for the mutual benefit of both parties.

***McCausland v. Wagner***, 78 A.3d 1093, 1100 (Pa. Super. 2013) (citations omitted). In the matter *sub judice*, complete equitable distribution could not be achieved under the scheme suggested by the Master. Moreover, there was no evidence presented regarding the value of the already secured gas and oil leases or the potential for future leases. In fact, the Master noted that prospective leases had an "uncertain value." Master's Report, 5/12/2014, at 5. Upon additional review, "[t]he parties entered into an oil and gas lease during the marriage regarding the Campground Road property and the Nancy Island property." ***Id.*** at 29. Husband was to retain those properties after equitable distribution. ***Id.*** at 53. Thus, Wife's argument that she was divested of her share of the profits carries some weight. Under the Master's recommendation, she was to retain a 50% interest in the gas and oil leases on the Campground and Nancy Island properties; in granting Husband's exception, Husband received all of those rights.

On appeal, however, Wife presents scant argument on this issue. She fails to identify which properties have gas and oil leases or how the trial court's determination affected her property rights specifically. Because the Master determined the current oil and gas leases have an uncertain value and Wife did not present evidence to the contrary, she failed to prove that she was aggrieved. We remind the parties that equitable distribution does not mean that assets will be divided equally, just equitably. ***Taper***, **supra**. Without valuing the oil and gas leases, Wife can hardly complain now that the trial court's award was an abuse of discretion. Thus, her first issue fails.

In her second issue presented, Wife contends that the trial court erred by failing to grant her relief on her petition for special relief and contempt. Wife's Brief at 14. She claims that Husband, despite a contrary order entered by the trial court, removed personal property awarded to her in conjunction with her award of the Tionesta Camp property. ***Id.*** at 15.

Initially, we note that Wife failed to support her argument with any citation to legal authority. "The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities." ***In re Estate of Whitley***, 50 A.3d 203, 209 (Pa. Super. 2012) (citation omitted). "This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority." ***Id***. Failure to cite relevant legal authority constitutes waiver of the claim on appeal. ***Id.*** For this reason, Wife's second issue is waived.

Regardless, this Court previously determined:

> A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment. A party must have violated a court order to be found in civil contempt. The complaining party has the burden of proving by a preponderance of evidence that a party violated a court order. To impose civil contempt the trial court must be convinced beyond a reasonable doubt from the totality of evidence presented that the contemnor has the present ability to comply with the order.
>
>        *        *        *
>
> We are mindful that this Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor.

*Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001) (citations omitted).

Upon review of the special relief petition hearing, Husband testified that he responded to the residence at issue because the security system was working improperly. N.T., 8/26/2014, at 72-73. When he arrived, there were water and electrical issues. *Id.* at 74. Husband removed a washer and dryer, a television and stand, and a moose head from the residence and placed them in a storage unit for safe-keeping. *Id.* at 75-77. He testified that they can be returned. *Id.* at 79. Husband testified that the parties' adult son took a gun safe, turkey mount, and a set of stairs from the residence. *Id.* at 77-79. The trial court ultimately "[found] that Wife [] presented insufficient evidence to sustain a finding of contempt." Order of Court, 10/1/2014. We agree. The trial court credited Husband's testimony

that he removed certain items for safe-keeping and that other items were removed by another person. Thus, the trial court implicitly determined that Husband did not willfully disobey prior directives not to remove items from the subject residence in an effort to deprive Wife of her rights to them. Thus, while Wife waived this issue for review, it is otherwise without merit.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  6/24/2015