J-A06002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ALBERT A. CIARDI, III | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| KIMBERLY E. CIARDI | |
| Appellant | No. 351 EDA 2016 |

Appeal from the Decree December 22, 2015
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2010-01239-DI

BEFORE:  PANELLA, J., SHOGAN, J., and RANSOM, J.

MEMORANDUM BY PANELLA, J.                           **FILED JUNE 01, 2017**

Appellant, Kimberly E. Ciardi ("Wife"), appeals from the decree divorcing her from Albert A. Ciardi ("Husband"). Wife contends the trial court miscalculated the tax consequences of Husband's business and that the court incorrectly credited Husband when the parties sold the marital residence. After careful review, we conclude Wife is due no relief on these issues, and affirm.

Husband and Wife were married in 1995, and separated in 2009. Husband and Wife have three children. Husband is an attorney who owns his practice. Wife has not worked outside of the home since 1995.

Prior to a hearing before a master, the parties agreed to divide their considerable marital assets with 60% of the assets allotted to Wife and 40% to Husband. However, the parties were unable to agree on how to distribute

Husband's two law firms, which he started during the marriage. Husband is the sole owner of Ciardi & Ciardi, PC, a Philadelphia law firm. Husband owns 50% of the Delaware-based firm Ciardi, Ciardi & Astin, PC.

Following another hearing, the master assigned Wife 50% of the value of the Philadelphia firm as her portion of the marital property, and 30% of Husband's share of the Delaware firm. The master also recommended Husband make three years of alimony payments to Wife at an annually decreased rate and that Husband pay $10,000 of Wife's counsel fees. Husband and Wife both filed exceptions to the master's report. Prior to the hearing before the trial court, Wife filed an emergency petition seeking disbursement of the assets from the recently sold marital home. The trial court disbursed the assets and deducted the payments from each party's equitable distribution portion of the marital assets.

After conducting a hearing, the trial court issued a final decree on December 22, 2015, divorcing the parties. The court sustained Husband's objection to the master's valuation of his interest in his law firms, as the master declined to assess taxes against the value of the businesses. The court assessed a 30% tax against Husband's business interests, and decreased Wife's equitable distribution award accordingly. The court also adjusted the award to account for the amount Wife received from the proceeds of the sale of the parties' home. The court thus reduced Wife's total equitable distribution award from $1,310,609 to $782,447.

Husband filed a notice of appeal to this Court. Wife then filed a notice of cross-appeal. After both parties complied with the trial court's directive to file Rule 1925(b) statements, Husband discontinued his appeal. Wife's issues alone are before us.

Prior to addressing Wife's claims on the merits, we must determine whether she properly preserved one of her issues for our review. Husband contends Wife waived her first argument, that the trial court improperly credited Husband for the sale of the marital home after the proceeds were fully distributed. Wife asserts the trial court distributed Husband's share of the funds from the sale of the home directly to him, and then assessed that same amount as owed to him again for that transaction—effectively crediting Husband twice for his share of the sale.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); *see also Morgante v. Morgante*, 119 A.3d 382, 396 (Pa. Super. 2015) (holding Husband's failure to raise challenge to equitable distribution award in his Rule 1925(b) statement constituted waiver).

Further, "Pennsylvania Rule of Appellate Procedure 2119 contains mandatory provisions regarding the contents of briefs. Rule 2119(a) requires the argument to be followed by discussion and pertinent citation of authorities. Additionally, this Court has held that arguments which are not sufficiently developed are waived." *Brody v. Brody*, 758 A.2d 1274, 1281 (Pa. Super. 2000).

Wife avers she preserved her argument in her Rule 1925(b) statement as follows: "The [trial court] erred in the calculation of money due Wife from Husband's [sic] when taking into consideration the credits between the parties in the Master's Report and Recommendation which were not challenged." Wife's Rule 1925(b) Statement, at 2. We find this statement far too vague to have adequately preserved Wife's specific argument. Wife's general assertion of error regarding the "credits" in the master's report does not challenge the distribution of assets from the marital home. Neither the master nor the trial court referred to Husband's share of the marital home as a "credit." The effect of Wife's generic assertion is to challenge the entire equitable division of the parties' assets, an arrangement Wife failed to contest before the trial court. Wife's decision not to object to the equitable distribution award before the trial court and to preserve it in her Rule 1925(b) statement precludes our Court from reviewing it at this time. **See** Pa.R.A.P. 302(a); **Morgante**, 119 A.3d at 396. Wife also fails to cite to any case law, other than the standard of review, in her brief. **See Brody**, 758 A.2d at 1281. Thus, we find Wife's first issue waived.[1]

In her remaining issues, Wife disputes the trial court's decision to

_____

[1] Even if Wife had properly preserved her issue for our review, her brief fails to justify her entitlement to an award and corresponding monthly payment schedule even higher than that recommended by the master or the trial court. Wife's proposed equitable distribution award does not account for the proceeds *she* received from the sale of the home, which the trial court marked as comprising part of her own award.

assess the tax effect against Husband's businesses and the percentages of the businesses awarded to her. The master recommended that Wife receive 50% of Husband's share in his Philadelphia firm, and 30% of Husband's share in his Delaware firm. The trial court adopted this recommendation in its final divorce decree, agreeing with the master's reasoning that an equitable distribution of Husband's share in his businesses would not reflect the 60/40 division in favor of Wife to which the rest of the marital assets were subject. The trial court noted that Husband's Delaware firm was formed only ten months before the parties separated, and that its value had been considerably enhanced by Husband's post-separation efforts. The court also noted that a 50% share of Husband's Philadelphia firm was equitable in light of the considerable other marital assets Wife was to receive in the divorce proceedings. However, the trial court also chose to assess the tax effect on Husband's share of his business, as the master's valuation did not reflect any tax consequences against either firm.

Our standard of review in equitable distribution matters is as follows.

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has was been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable

distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

**Childress v. Bogosian**, 12 A.3d 448, 455 (Pa. Super. 2011) (citations and quotation marks omitted).

There is no simple formula by which to divide marital property; the method of distribution derives from the facts of the individual case. **See Gaydos v. Gaydos**, 693 A.2d 1368, 1376 (Pa. Super. 1997). In fashioning an equitable distribution award, the trial court must consider, at a minimum, the eleven factors set forth in 23 Pa.C.S.A. § 3502, Equitable division of marital property, (a) General rule. "The courts attempt to split property equitably, instead of equally, taking into consideration such factors as length of marriage, the contributions of both spouses, ages and health of each spouse." **Taper v. Taper**, 939 A.2d 969, 974 (Pa. Super. 2007) (citation omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable James P. MacElree II, we conclude Wife's remaining issues on appeal merit no relief.

*See* Trial Court Opinion, filed December 22, 2015, at 6-10. The trial court makes clear in its opinion its reasons for assessing the conservative 30% tax against Husband's two businesses. The court also plainly expresses its reasons for adopting the master's recommendation on the percentages of each firm given to Wife as part of her equitable distribution award. Accordingly, we affirm based on the trial court's opinion.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/2017

ALBERT A. CIARDI, III,  : IN THE COURT OF COMMON PLEAS
        Plaintiff

                    : CHESTER COUNTY, PENNSYLVANIA

    v,                  : IN DIVORCE

KIMBERLY E. CIARDI,  : NO. 2010-01239
        Defendant

Stephen Lagoy, Esquire, Daniel Hanifin, Esquire, Attorneys for Plaintiff
Lance Nelson, Esquire, Julie Potts, Esquire, Attorneys for Defendant

## OPINION AND ORDER

This matter is before the Court on the Exceptions to the Report and Recommendation of Master Rochelle Grossman, Esquire, filed by Plaintiff Albert Ciardi, III (Husband) and Defendant Kimberly Ciardi (Wife).

### Factual and Procedural History

Husband and Wife were married on August 12, 1995 and separated on October 30, 2009. It was the first marriage for both parties. They are the parents of Albert, age nineteen, Samantha, age eighteen, and A███████, age fifteen. Wife is forty-eight years old and has a college degree in mathematics but has not worked outside her home since 1995. Husband is forty-nine years old and is an attorney with practices in both Philadelphia and Wilmington, Delaware. Both are in good health.

Husband filed for divorce on February 3, 2010, and moved from the marital residence on March 18, 2010. He requested the appointment of a Special Master on November 30, 2010. On December 6, 2013, this matter and the parties' pending support matter

SENT
DEC 23 2015

were consolidated for all purposes including trial. The Master ultimately heard four days of testimony on the parties' claims. Prior to trial, the parties had stipulated that the marital assets be split 60% to Wife and 40% to Husband. Specifically excluded from the agreement was the valuation and distribution of Husband's interest in his two law firms. Thus, the Master heard testimony on the equitable distribution of these assets.

The Master issued her Report and Recommendation on November 19, 2014. In it she valued Husband's interests in his two law firms and recommended that Wife receive 50% of the value of the Philadelphia firm and 30% of the value of the Wilmington firm in equitable distribution. The Master also recommended that Husband pay alimony to Wife for a period of seventy-two months post-divorce, and that he pay $10,000 of Wife's counsel fees. On December 10, 2014, Husband filed his Exceptions to the Report and Recommendation of the Master. Wife filed her Exceptions on December 30, 2014.

## Standard of Review

In reviewing exceptions to a report of a master, this Court must give the master's report our "fullest consideration," particularly regarding the credibility of witnesses. *Taper v. Taper*, 939 A.2d 969, 973-74 (Pa.Super. 2007). "There is no simple formula by which to divide marital property; the method of distribution derives from the facts of the individual case." *Id*. at 974. Property is to be split equitably, not necessarily equally. *Id*. The final responsibility for the determination of whether an asset is part of the marital estate, and for the equitable distribution of the marital property, rests with the Court. *Tagnani v. Tagnani*, 654 A.2d 1136, 1138 (Pa.Super. 1995).

2

Husband originally filed thirty-three exceptions to the Master's report. In his brief he has consolidated the thirty-three exceptions into five main claims. The first three concern the valuation and distribution of his interest in the two law firms in which he is associated. Additionally, two of Wife's four exceptions also concern the valuation and distribution of Husband's interest in these two firms.

Husband is a bankruptcy attorney with practices in Philadelphia and Wilmington, Delaware. Husband owns 100% of the Philadelphia practice, Ciardi & Ciardi, PC ("CC"). He owns 50% of the Wilmington practice, Ciardi, Ciardi & Astin, LLC ("CCA"). After hearing extensive testimony on the issue, the Master found the fair market value of Husband's interest in CC for purposes of equitable distribution to be $2,905,000, and his interest in CCA to be $1,026,800. The Master then recommended that Wife receive 50% of the value of CC, and 30% of the value of CCA in equitable distribution. In his exceptions, Husband asserts error in the Master's valuation of his interest in the firms, and in her determination of the extent to which the Wilmington firm is a marital asset. He also claims that the Master erred in failing to consider the effect of taxes on the net value of the firms' accounts receivables. Wife claims the Master erred when she treated Husband's Wilmington firm differently than his Pennsylvania firm, and in recommending that Wife receive only 30% of the Wilmington firm's value and only 50% of the Pennsylvania firm's value.

3

Both parties presented expert testimony as to the value of these assets. Husband's expert, Frank Merenda, CVA, BCA, CMEA, MSChE, MBA, applied a fair market value standard of value, under the "premise of liquidation." Wife's expert Gregory Cowhey, ASA, CVA, also applied a fair market value standard of value, using the "cost approach" for CC, and a combination of the "cost approach" and "income approach" for CCA.

The Master rejected Husband's expert's "forced liquidation" value as inapplicable to the facts and circumstances presented, as Husband would not be required to sell or liquidate his business interests to meet his equitable distribution obligation. However, the Master did not fully accept Wife's expert's valuation either, which valued Husband's interest using accounts receivable, because he had failed to include in his calculations any reduction for those accounts receivable which could not be collected.

In *Butler v. Butler*, 663 A.2d 148, 154 (Pa. 1995), the Pennsylvania Supreme Court acknowledged that "given the fact specific nature of such matters, there can be no single formula for valuing a business interest of a spouse for purposes of equitable distribution that will apply in all circumstances." It then cited as helpful the New Jersey Supreme Court case of *Stern v. Stern*, 331 A.2d 257 (1975), which found that, generally, the monetary worth of a law partnership will consist of its partners' capital accounts, accounts receivable, work in progress and certain other elements reduced by accounts payable and other liabilities.

4

In valuing CC, the Master averaged the firm's accounts receivable, less the accounts payable, for the years 2010, 2011, and 2012. She chose not to include in her calculations CC's 2013 numbers, although in the usual case, a valuation date reasonably proximate to the distribution date is to be used. _Sutliff v. Sutliff_, 543 A.2d 534, 536 (Pa. 1988). Here the Master found that CC's 2013 accounts receivables were not indicative of CC's true value, as over two million dollars of the receivables had been "written-off," an unprecedented and unusually high amount, and Husband had complete control over the timing and the amount of the write-offs. The Master subtracted from the accounts receivable the average write-off (32%) for the years 2010-2012, for a subtotal of $2,608,000. To this value she added $296,834, the value of 2013 work-in-progress similarly discounted, and determined that the fair market value of Husband's interest in CC was $2,905,000.

In valuing CCA, the Master did not accept Husband's expert's valuation, as his valuation was again based on a liquidation premise. Wife's expert valued CCA two ways, under the cost approach for $2,558,000, and under the income approach for $2,668,000. Again, however, Wife's expert did not discount the accounts receivable for lack of collectability. Accordingly, the Master applied CCA's historic write-off rate of 26.5% (as testified to by Husband's expert Karen Jamieson) to the cost approach value. The Master then added the value of work-in-progress, similarly discounted, for an adjusted cost approach value. She then averaged the two values. Finally, since Husband is only a 50% owner of CCA, the Master found that this lack of control and

5

marketability mandated the application of a further discount. The parties' experts agreed that a 15% discount was appropriate, resulting in a value of $1,026,800 for Husband's 50% interest in CCA for purposes of equitable distribution.

We have comprehensively reviewed the Master's discussion on this issue, which appears at pages eleven to twenty-two of her report, as well as the briefs and arguments of both parties. We find the Master's consideration, analysis and decision regarding the firm's valuations to be compelling, save for one matter, Husband's claim that the Master erred when she failed to consider and apply the effect that taxes would have on the value of the accounts receivable when they are paid.

23 Pa.C.S.A. §3502(a)(10.1) requires that the tax ramifications of each asset to be distributed be considered when making an award of equitable distribution. Husband presented the expert testimony of Ronald Drucker, CPA, JD, LLM, who opined that the accounts receivable should be reduced by approximately 50% for an after tax value. See: Exhibit H-22A. Mr. Drucker, however, made numerous assumptions in coming to this conclusion, including applying the highest possible federal tax rate. The Master considered this testimony but rejected it, finding that the expert's unsupported assumptions, including his belief that Husband would be required to liquidate his law firms to pay his equitable distribution obligation, rendered his opinion of little value.

The Master considered the tax effect on Husband's business interests at pages twenty-two through twenty-five of her report. She ultimately found the tax effect to be

6

not quantifiable, and declined to apply any specific dollar amount or percentage against the value of Husband's businesses. We believe that this was error, for taxes would be assessed at a rate somewhere between 20% and 50% on these receivables when collected. We agree however, that such taxes are difficult to quantify at this point. Thus, we will apply the conservative tax rate of 30% to determine the value of Husband's businesses. This adjustment results in a final value of $2,033,500 for Husband's interest in CC, and a final value of $718,760 for Husband's 50% interest in CCA for purposes of equitable distribution. Husband's exception on this issue will be sustained

As to the remainder of Husband's exceptions, we again note that when valuing marital property for purposes of equitable distribution, the Divorce Code does not specify a particular method of valuation. _Childress v. Bogosian_, 12 A.3d 448, 456 (Pa.Super. 2011). Further, a court is free to accept all, part or none of the evidence offered as to the true and correct value of the property. _Id._ We find that, based on all of the evidence presented, the remainder of the Master's analysis in valuing these two firms was correct, and will overrule the remainder of Husband's exceptions on this issue.

Wife objects to the Master's recommendation that she be awarded only 50% of the value of CC, and only 30% of CCA's value. Instead, she argues that CCA, although formed only months before the parties' separation, was merely an extension of CC and

7

that she should be awarded 60% of the value of both firms under the equitable distribution factors.

In fashioning an equitable distribution award, "trial courts have broad equitable powers to effectuate justice in these matters and are to analyze and apply the factors set forth in 23 Pa.C.S. §3502." *Gill v. Gill*, 677 A.2d 1214, 1216 (Pa. Super. 1996). "The facts of a particular case mandate how the section 3502 factors will be applied." *Gates v. Gates*, 933 A.2d 102, 105 (Pa.Super. 2007). The factors set forth in 23 Pa.C.S.A. §3502(a) are as follows:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

8

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

Again, the Master, prior to making her recommendation, fully considered and weighed each statutory factor before determining the split of these assets. See: Report of the Master, pages thirty-one through thirty-four. She acknowledged the income disparity between the parties and Wife's custody of the children, but also noted the fact that Wife was to receive 60% of all marital assets other than Husband's businesses. She then determined that a 50/50 split of the value of CC was equitable. Because CCA had been formed only ten months before the parties' separation, and its value was impacted by Husband's four years of post-separation efforts, the Master recommended that it be distributed 30% to Wife and 70% to Husband.

We find the Master's distribution recommendation equitable. Wife will be receiving significant assets in equitable distribution, and consideration of all statutory factors against the facts of this case compels the conclusion that Wife is not entitled to receive more than half of CC's value, or more than 30% of the value of CCA, in equitable distribution. Equitable distribution "does not presume an equal division of marital

9

property and the goal of economic justice will often dictate otherwise." *Mercatell v. Mercatell*, 854 A.2d 609, 612 (Pa.Super. 2004). We find the Master's recommendation on this matter fair, reasonable and equitable, and Wife's exception on this issue will be overruled.

In his fourth claim, Husband asserts that the Master erred when she recommended that Husband pay Wife alimony post-divorce.

23 Pa.C.S.A. § 3701(a) provides that a court entering a divorce decree may also award alimony, if it finds that such an award is necessary. In determining whether alimony is necessary, and its amount and duration, a court is to consider the seventeen factors listed in 23 Pa.C.S.A. § 3701(b). They are:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

10

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

In her analysis of this issue, the Master imputed to Wife $4,400 a month in net income. She then balanced this against what she found to be Wife's reasonable monthly expenses of $7,100, resulting in a monthly shortfall of $2,700. She noted Husband's net income of $58,000 per month and his $11,000 monthly reasonable needs. After considering all relevant factors, including the fact that Wife would be receiving significant assets in equitable distribution, she determined than an award of alimony was nevertheless appropriate. See: Report of the Master, pages thirty-eight

11

through forty-two. However, the Master's recommendation was that Husband pay alimony for a period of three years only and that the amount be reduced each year, $3,000 per month in year one, $2,000 per month in year two, and for the final year, $1,000 per month.

Alimony is to be "based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during their marriage, as well as the payor's ability to pay." *Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa.Super. 2004) (citation omitted). We acknowledge here that Wife will be receiving a large equitable distribution award. We recognize that alimony is a "secondary remedy" that "is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill." *Id.*, (citation omitted). Here, we find it an appropriate remedy, limited as it is in amount and duration. Husband's exception on this issue will be overruled.

Finally, Husband makes a brief argument claiming that the Master's suggested scheme of alimony, child support and equitable distribution is "punitive." The Master recommended that Husband satisfy his equitable distribution obligation to Wife by paying her $20,000 a month for seventy-two months. Husband claims that when added to his child support, alimony, and other expenses this "imposes an unjust and inequitable burden on him." Because we have adjusted the value of Husband's firms, he will now be paying to Wife $13,857 a month for sixty months. Husband has available to him net monthly income of $58,000. Even after subtracting all of his required

12

payments, Husband still has more than sufficient income to meet his "reasonable needs" as well as additional disposable income to do with what he chooses. Further, Husband will complete his equitable distribution to Wife in five years, two years after he stops paying alimony. Husband is entitled to no relief on this claim.

In Wife's last two exceptions she objects to the Master's placing the fair market value of the marital residence at $2.4 million dollars, and in not discounting the fair market value for costs of sale. Wife asserts that the fair market value of the home should instead be set at $1.86 million dollars.

Wife filed her exceptions in December, 2014. At that time, the marital residence had been on the market for two years and its sale price had been twice reduced, from its original price of 4.4 million dollars to 2.6 million dollars in April of 2014. In July, 2015, an offer of 2.3 million dollars was made on the home and was accepted. The parties agreed to split the proceeds of the sale 60% to Wife and 40% to Husband. Settlement occurred on October 2, 2015. On October 26, 2015, we entered an order disbursing the proceeds of the sale. Accordingly, Wife's exceptions regarding the value of the martial residence will be overruled as moot.

For the reasons stated above, we enter the following:

13